UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOKOL WORLD ENTERTAINMENT, INC.,

      Plaintiff,

    v.

SMALL BUSINESS ADMINISTRATION, et al.,

      Defendant.

Civil Action No. 21-2385 (TSC)

**MEMORANDUM OF POINTS AND AUTHORITIES [1] IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND
[2] IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................ ii

STATUTORY BACKGROUND ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

    I.      Plaintiff's Application for SVOG Funding .............................................. 3

    II.     Plaintiff and Its Business, Club Cobra ................................................... 4

PROCEDURAL BACKGROUND .......................................................................................... 7

LEGAL STANDARD ............................................................................................................ 8

ARGUMENT ........................................................................................................................ 10

    I.      SBA's Denial is Not Arbitrary or Capricious and is Supported by the Record.... 10

    II.     SBA's Denial is Not Contrary to Law. ................................................ 14

    III.    Plaintiff Has Not Demonstrated that the SBA's Denial is Arbitrary or Capricious, Unsupported by the Record, or Contrary to Law. ................................................ 17

        A.     Plaintiff Fails to Show Any Disparate Treatment by SBA. ...................... 18

        B.     SBA Did Not Ignore the Information Plaintiff Submitted. ........................ 26

        C.     SBA Did Not Improperly Define "Prurient Interest." ............................. 27

CONCLUSION .................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ............................................................................... 12

*Am. Bar Ass'n v. FTC*,
430 F.3d 457 (D.C. Cir. 2005) ............................................................................... 14

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ............................................................................... 9

*Am. Wild Horse Pres. Campaign v. Perdue*,
873 F.3d 914 (D.C. Cir. 2017) ............................................................................... 26

*Babb v. Wilkie*,
140 S. Ct. 1168 (2020) ...................................................................................... 10, 15

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ............................................................................................... 15

*Bloch v. Powell*,
227 F. Supp. 2d 25 (D.D.C. 2002) ........................................................................... 8

*Borgess Med. Ctr. v. Sebelius*,
966 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................ 9, 11

*Chambers v. District of Columbia*,
35 F.4th 870 (D.C. Cir. 2022) ................................................................................ 26

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ......................................................................................... 10, 11

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003) ........................................................................................... 10, 15

*DIRECTV, Inc. v. FCC*,
110 F.3d 816 (D.C. Cir. 1997) ............................................................................... 11

*Eagle Broad. Grp., Ltd. v. FCC*,
563 F.3d 543 (D.C. Cir. 2009) .......................................................................... 18, 19

*Epsilon Elecs., Inc. v. Dep't of Treasury*,
857 F.3d 913 (D.C. Cir. 2017) ............................................................................ 9, 10

*FCC v. Fox Television Studios, Inc.*,
556 U.S. 502 (2009) ................................................................................................................ 9

*FCC v. Nat'l Citizens Comm. for Broad.*,
436 U.S. 775 (1978) ................................................................................................................ 9

*Fla. Gas Transmission Co. v. FERC*,
604 F.3d 636 (D.C. Cir. 2010) ........................................................................................ 11, 14

*Grp. Life & Health Ins. Co. v. Royal Drug Co.*,
440 U.S. 205 (1979) .............................................................................................................. 14

*Havens v. Mabus*,
146 F. Supp. 3d 202 (D.D.C. 2015) ................................................................................. 10, 11

*Loma Linda Univ. Med. Ctr. v. Sebelius*,
684 F. Supp. 2d 42 (D.D.C. 2010) ......................................................................................... 9

*Loper Bright Enterprises v. Raimondo*,
No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024) ........................................................ 10

*Mach Mining, LLC v. Sec'y of Labor*,
809 F.3d 1259 (D.C. Cir. 2016) .............................................................................................. 9

*Marsh v. Or. Nat'l Res. Council,*
490 U.S. 360 (1989) .............................................................................................................. 11

*MomoCon, LLC v. Small Bus. Admin.*, Civ. A.,
No. 21-2386 (RC), 2023 WL 8880335 (D.D.C. Dec. 22, 2023) ..................................... 25, 26

* *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................................................................................ passim

*Nat'l Lab. Rels. Bd. v. Noel Canning*,
573 U.S. 513 (2014) .............................................................................................................. 10

*Nat'l Lifeline Ass'n v. FCC*,
983 F.3d 498 (D.C. Cir. 2020) .............................................................................................. 10

* *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*,
116 F.3d 520 (D.C. Cir. 1997) .............................................................................................. 24

*Occidental Eng'g Co. v. INS*,
753 F. 2d 766 (9th Cir. 1985) ............................................................................................... 10

*Palisades Gen. Hosp. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) .............................................................................................. 29

*PPG Inds., Inc. v. United States*,
   52 F.3d 363 (D.C. Cir. 1995) ................................................................................... 29

*Richards v. INS*,
   554 F.2d 1173 (D.C. Cir. 1977) ................................................................................. 9

*Roth v. United States*,
   354 U.S. 476 (1957) .......................................................................................... 14, 27

*Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*,
   512 F. Supp. 2d 32 (D.D.C. 2007) ........................................................................... 11

*Sierra Club v. Salazar*,
   177 F. Supp. 3d 512 (D.D.C. 2016) ............................................................................ 9

*U.S. Int'l Union v. Pension Ben. Guar. Corp.*,
   707 F.3d 319 (D.C. Cir. 2013) ................................................................................. 11

*U.S. Int'l Union v. Pension Ben. Guar. Corp.*,
   839 F. Supp. 2d 232 (D.D.C. 2012) .......................................................................... 10

*United Airlines, Inc. v. TSA*,
   20 F.4th 57 (D.C. Cir. 2021) ................................................................................... 19

*Virginia v. Johnson*,
   609 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 11

**Statutes**

5 U.S.C. § 706 ............................................................................................................. 9, 11

*   15 U.S.C. § 9009a ........................................................................................................ passim

**Other Authorities**

Pub. L. No. 116-260 ......................................................................................................... 1, 2

Pub. L. No. 117-158 ............................................................................................................. 2

Pub. L. No. 117-2 ................................................................................................................ 2

Pub. L. No. 117-328 ............................................................................................................. 2

13 C.F.R. § 120.110 ........................................................................................................... 15

60 Fed. Reg. 64356 ........................................................................................................... 16

61 Fed. Reg. 3226 ............................................................................................................. 16

In this Administrative Procedure Act ("APA") litigation, Plaintiff, Sokol World Entertainment, Inc. ("Sokol"), challenges the denial of its request for $486,761.85 in program funds as a "live venue operator" under the Shuttered Venue Operators Grant ("SVOG") program. In denying Plaintiff's application, Defendant Small Business Administration ("SBA") determined that Plaintiff's club presents live performances of a prurient sexual nature—a condition that is automatically disqualifying under the SVOG statute. In reaching this decision, SBA reviewed the administrative record before it, including the records of those alleged competitors identified by Plaintiff who were issued an SVOG award. For the reasons set forth below, SBA's reasoning was not arbitrary or capricious, was supported by substantial evidence, and is consistent with the law. Therefore, Defendants SBA and SBA's Administrator, Isabella Casillas Guzman, respectfully move for summary judgment in their favor and oppose Plaintiff's motion for summary judgment ("Pl. Mot," ECF No. 75).

## STATUTORY BACKGROUND

Congress established the SVOG Program through the Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act. Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022 (2020) (Div. N, Tit. III of the Consolidated Appropriations Act, 2021, codified at 15 U.S.C. § 9009a). Intended to alleviate some of the economic hardship the COVID-19 pandemic had imposed, the SVOG Program provided grants to eligible persons or entities that (1) were fully operational on February 29, 2020, and (2) had at least twenty-five percent less gross earned revenue in any quarter in 2020 than it had in the same quarter a year earlier. 15 U.S.C. § 9009a(a)(1)(A)(i); Pub. L. No. 116-260, Div. N, 134 Stat. at 1949.

Entities eligible for SVOG funds included a "live performing arts organization operator," defined as an individual or entity "that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events

by performing artists," and meets certain other criteria not relevant here. 15 U.S.C. § 9009a(a)(1)(A), (a)(3)(A)(i)(I). SVOG awards, however, cannot be issued to a person or entity that "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." *Id.* § 9009a(1)(B).

Congress initially appropriated $15 billion of SVOG funds, then later appropriated another $1.25 billion through the American Rescue Plan Act. Pub. L. No. 116-260, § 323(d)(1)(H), 134 Stat. at 2021; Pub. L. No. 117-2, § 5005(a), 135 Stat. 4, 92 (2021). Congress made the $16.25 billion in appropriations entirely for SVOG awards with the exception of $500,000 to provide technical assistance to help applicants access the System for Award Management or alternative grant application system, as set forth in the American Rescue Plan Act. Richards Decl. ¶ 4, *Momocon v. SBA*, Civ. A. No. 21-2386 (D.D.C.), ECF No. 46-1. On June 25, 2022, Congress passed the "Keep Kids Fed Act of 2022," which amended the Families First Coronavirus Respond Act and rescinded $1.2 billion in SVOG funds from unobligated balances. *See* Pub. L. No. 117-158, 136 Stat. 1309, 1311 (2022).

Then in December 2022, Congress enacted the Consolidated Appropriations Act, 2023, which rescinded $459 million in unobligated SVOG funds. *See* Pub. L. No. 117-328, Div. MM, § 101(d)(2), 136 Stat. 4459 (2022). At that time, the amount of unobligated grant funds that Congress rescinded—$459 million—exceeded the balance of such funds remaining at the time of the rescission—$454,328,922. Defs.' Mot. to Stay, Ex. 1, Richards Decl. ¶¶ 4-12, ECF No. 53-1; Ex. B, Richards Decl. ¶ 9, *Golden Ent. PA v. SBA*, Civ. A. No. 22-1731 (JDB) (D.D.C. Apr. 10, 2022), ECF No. 28-2.

Since December 2022, however, grantees have returned SVOG funds to SBA. Defs.'

Notice of Filing & Bankruptcy Order, ECF No. 60; Defs.' Notice, ECF No 61; Defs.' Notice

Regarding Mootness, ECF No. 62. As of July 28, 2023, SBA had received or otherwise recovered

additional funds, totaling nearly $28 million. Defs.' Notice Regarding Mootness, Ex. A, Letter

Filed in *Concert Investor, LLC v. SBA*, No. 22-5253 (D.C. Cir.), ECF No. 19-1.

<b>STATEMENT OF FACTS</b>

**I.      Plaintiff's Application for SVOG Funding**

On April 26, 2021, Plaintiff applied for $486,761.85 in SVOG funds in an initial

application as a live venue operator.[1] Admin R. ("AR") 213-14. As part of the SVOG application

process, Plaintiff was asked to respond "yes" or "no" to the question: "EQ 140: Does Applicant

present live performances of a prurient sexual nature or derive directly or indirectly more than de

minimis gross revenue through the sale of products or services, or the presentation of any

depictions or displays, of a prurient sexual nature?" AR 220. Plaintiff responded "No." *Id.*

Plaintiff learned from the SBA's SVOG portal that the SBA denied its application. 2d Am.

AR 3. Plaintiff submitted an administrative appeal of the denial on August 12, 2021. AR 1-43.

On August 26, 2021, SBA notified Plaintiff that it denied the company's appeal. AR 225.

Approximately one week later, on September 3, 2021, SBA notified Plaintiff that it intended "to

---

[1]      At times, Plaintiff's Amended Complaint and Motion for Summary Judgment inconsistently assert that Plaintiff demonstrated its eligibility as a "live performing arts organization" as opposed to a "live venue operator." *Compare* 2d Am. Compl. ¶ 29, ECF No. 69 at 7 (addressing qualification as live performing arts organization); ECF No. 75 ("Pl.'s Mot.") at 9 (same), *with* 2d Am. Compl. ¶ 23, ECF No. 69 at 5 (indicating qualification as live venue operator). While the administrative record makes clear that Plaintiff in fact self-identified as a live venue operator, *see* AR 213, the distinction is irrelevant to the Court's analysis of the parties' cross-motions as the same statutory definition applies to both qualified activities. *See* 15 U.S.C. § 9009a(a)(3)(A)(i)(I). Importantly, the exclusion for performances of a prurient sexual nature also applies to both.  15 U.S.C. § 9009a(1)(B).

conduct a more comprehensive evaluation of the applications for those, including [Plaintiff], who already had an appeal decision." ECF No. 13 at 5 n.3. Before SBA completed that review, Plaintiff filed a Complaint in this Court on September 9, 2021. ECF No. 1.

## II.      Plaintiff and Its Business, Club Cobra

As a general matter, SBA primarily reviewed the materials submitted by applicants like Plaintiff in their applications when determining initial eligibility for an SVOG award. AR 272. SBA requested applicants like Plaintiff to provide website addresses to allow SBA to determine that the business was in operation, a real business, and that operations were what the applicant stated. *Id*. Upon this review of the materials and the applicant's website, if there were no concerns regarding prurient interest, SBA's review ended. *Id*. If, however, a concern was raised with the applicant's prurient interest activities under 15 U.S.C. § 9009a(1)(B), the file was flagged and sent for a subsequent review by SBA's Legal Counsel. *Id*. This resulted in a further review to determine the nature of the business and whether it ran afoul to the SVOG Program's statutory requirements. AR 272. Because of the marketing materials that Plaintiff submitted with its application, Plaintiff's application was referred for further review of the operations of its business, Club Cobra. AR 272 (citing AR 190).

Plaintiff's appeal application states that its businesses, Club Cobra & CHICO,[2] are "Live Performance Venues in Los Angeles" that "produce 8 Live Events a week" including "both seasoned celebrity Drag Performers (RuPaul's Drag Race) and celebrated Los Angeles DJ's who themselves are performers." AR 1. The appeal application materials included what Plaintiff

---

[2]      This is the only reference to "CHICO" in Plaintiff's application materials. *See generally* AR 44-50, 95-222. CHICO is not referenced in Plaintiff's Second Amended Complaint, nor is it referenced in Plaintiff's motion for summary judgment. *See generally* 2d Am. Compl.; Pl.'s Mot. CHICO is therefore not addressed in this cross-motion.

represented were its "advertising, online presence and footage from live events." AR 1. Specifically, Plaintiff included fliers for a January 2019 Club Cobra performance by a DJ Eduardo, *see* AR 30, and a May 2019 Club Cobra performance by a Vicky Chavarria, *see* AR 29, among others.

More information about the nature of Club Cobra and the entertainment they present is available at the business's website and social medial pages, several of the web addresses for which Plaintiff listed in its application materials. AR 31 (identifying Club Cobra's website as ClubCobraLA.com, its Instagram handle as @clubcobra, and its Facebook page as https://www.facebook.com/clubcobrala).

Club Cobra's social media pages, including Facebook and Instagram, contain numerous images and videos depicting muscled male go-go dancers performing and modeling. AR 16-20 (images from Club Cobra's Instagram account); AR 21-22 (images from Club Cobra's Facebook page). The images show the dancers in seemingly sexualized poses typically wearing only revealing thong underwear or jockey shorts, with the camera angle often emphasizing the subjects' genitalia. *Id.* Additionally, in some images the dancers are shown pulling down their underwear and in other images tip money is shown protruding from the dancer's waistband. *See, e.g.*, AR 16, 21.

Images and reviews submitted by Club Cobra patrons to Yelp.com provide further insight into the nature of Club Cobra's go-go performances. In two instances, Yelp reviewers refer to the go-go dancers as "sexy."[3] And when SBA reviewed Club Cobra's Yelp reviews for purposes of

---

[3]   Luis P., Yelp (Mar. 19, 2019), https://www.yelp.com/biz/club-cobra-north-hollywood?start=40&sort_by=date_desc ("[T]he dancers are really sexy"); Jeff N., Yelp (Oct. 20, 2018), https://www.yelp.com/biz/club-cobra-north-hollywood?start=40&sort_by=date_desc ("Great music and dancing, sexy dancers and great shows."); *see also* Ms. L., Yelp (May 20, 2018), https://www.yelp.com/biz/club-cobra-north-hollywood?start=60&sort_by=date_desc ("BUT the

its November 3, 2021, Decision, it found other reviewers referring to the go-go dancers as "strippers." AR 224.[4] And a photo uploaded by one patron shows him touching a go-go dancer's upper thigh inches away from the dancer's underwear. AR 25.[5]

Further, in 2020, Plaintiff began filming an exotic dance show called "The Clubhouse" featuring videos of the Club Cobra male go-go dancers. *See* Caitlin Hernandez, *How a North Hollywood queer club is booming on OnlyFans during COVID-19*, USC Annenberg Media (May 4, 2021), https://www.uscannenbergmedia.com/2021/05/04/how-a-north-hollywood-queer-club-is-booming-on-onlyfans-during-covid-19; AR 42 (copy of the same article, submitted by Plaintiff with its application materials). Marty Sokol, Plaintiff Sokol's President and Club Cobra's owner, filmed the shows in his house and described them on a radio program in May 2021 as having no nudity but consisting of "erotic content." *Id*. The show was made available for a $5 monthly subscription on the website OnlyFans.com, a website often used for viewing pornographic content. *Id*.; AR  24. Club Cobra's Twitter page advertised the erotic dance shows with images of the dancers in suggestive poses wearing only thong underwear or tight jockey shorts as well as brief portions of the video content. AR 22-24 (images from Club Cobra's Twitter). In one video, a dancer is shown wearing only jockey shorts in a shower while he splashes water over his body as

---

dancers have gotten a bit raunchy, touching their penis while dancing and we caught one bartender touching one of the dancers penis behind the bar.").

[4]    In their December 17, 2021, Motion to Dismiss, or Alternatively Motion for Summary Judgment, Defendants noted that there were two Yelp reviews at least as of October 11, 2021, that stated: (1) "A great Latin Club in Burbank! On Fridays nights, Latin music, strippers and drag performers."; and (2) "The atmosphere, the music, the strippers the great show." ECF No. 24-1 at 11 n.6. As of July 3, 2024, those Yelp reviews no longer appear on the Yelp website. *See* Yelp, https://www.yelp.com/biz/club-cobra-north-hollywood (visited July 3, 2024).

[5]    Richard W., Yelp (Aug. 22, 2018), https://www.yelp.com/biz/club-cobra-north-hollywood?start=50&sort_by=date_desc.

the camera pans down over the dancer's bare chest and genitalia. AR 24-25. In another video, a dancer in only thong underwear is shown sitting on the edge of a bed while the camera pans up and down his body providing close ups of his seemingly aroused genitalia. *Id.*

## PROCEDURAL BACKGROUND

On September 9, 2021, Plaintiff filed a Complaint in this Court seeking judicial review of the SBA's initial denial. Compl., ECF No. 1. On September 27, 2021, Defendants filed a consent motion to remand to the SBA. *See* ECF Nos. 12, 13. The Court granted Defendants' motion in part, remanding the matter to the SBA. *See* Oct. 25, 2021, Min. Order.

On November 3, 2021, SBA denied Plaintiff program funds. AR 223-24. In its denial, SBA stated that, after a thorough and comprehensive reevaluation of Plaintiff's appeal, SBA denied the company's application because Plaintiff is ineligible for the SVOG program on the basis that the business violates 15 U.S.C. 9009a(1)(B), which prohibits SBA from issuing SVOG awards to a business that "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." *Id.*

On November 24, 2021, Plaintiff filed its First Amended Complaint challenging SBA's November 3, 2021, denial of an SVOG award. 1st Am. Compl., ECF No. 17. Plaintiff thereafter filed its motion for summary judgment, ECF No. 20, and Defendants filed a motion to dismiss, or alternatively motion for summary judgment, ECF No 24. Both parties also submitted motions to consider extra-record evidence. ECF Nos. 19, 36.

On September 28, 2022, the Court granted Plaintiff's motion for summary judgment and denied Defendants' motion to dismiss, or alternatively, for summary judgment. Mem. Op., ECF No. 47. The Court also granted the parties' motions to consider extra-record evidence. *Id.* The Court found SBA's decision to be arbitrary and capricious on the sole basis that "the record does

not show that the SBA provided a reasonable justification for this disparate treatment" between Plaintiff and "five of [Plaintiff's] alleged direct competitors [who] received SVOG awards." *Id.* at 11. As a result, the Court remanded to the SBA "for supplementation of the administrative record as necessary regarding [Plaintiff]'s competitors." *Id.* at 12.

On December 14, 2022, SBA issued a new decision again denying Plaintiff program funds based on the prurient interests in the business's live performances. AR 271-74. In its decision letter to Plaintiff, SBA also discussed the five competitors that received SVOG awards and whom Plaintiff asserted in their First Amended Complaint were similarly situated to itself. AR 272-74. For three of Plaintiff's identified competitors (Jewel's Catch One Corporation, Club Los Globos Corporation, and Vern Theater Inc.), SBA reviewed the marketing materials for these businesses and determined that any events Plaintiff identified in their Amended Complaint occurred after the business received an award. AR 272-74. SBA noted that "[a]ny events that occur after an award is made that raise concerns about an entit[y's] use of grant funds on ineligible activities will be reviewed and addressed in the grant monitoring and audit process." *Id.* For the other two identified competitors (Pico Productions and Reload Entertainment), SBA determined that there was not sufficient evidence that these businesses put on live performances of prurient interest. As a result, SBA determined that it properly denied Plaintiff an SVOG award. AR 273-74.

After the stay was lifted on January 2, 2024, Plaintiff filed its Second Amended Complaint on January 23, 2024, challenging SBA's December 14, 2022, denial. Jan. 2, 2024, Min. Order; 2d Am. Compl., ECF No. 69. On April 15, 2024, Plaintiff filed its motion for summary judgment. Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 75.

## LEGAL STANDARD

"Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Bloch v.*

*Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (quoting *Richards v. INS*, 554 F.2d 1173, 1177, n.28 (D.C. Cir. 1977)). In a case involving review of final administrative action, the summary judgment standard of review set forth in Rule 56 applies in a different manner than typical. *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 527 (D.D.C. 2016). A court must "decid[e], as a matter of law, whether an agency action is supported by the administrative record and consistent with the . . . [arbitrary and capricious] standard of review [under the APA]." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citation omitted)); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977). In making this determination, a "district . . . [court] sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citations omitted).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 513 (2009). It requires a court to uphold an agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "Under the arbitrary and capricious standard, an agency action 'may be invalidated . . . if [it is] not rational and based on consideration of the relevant factors.'" *Borgess Med. Ctr. v. Sebelius*, 966 F. Supp. 2d 1, 5 (D.D.C. 2013) (citing *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978)). Substantial evidence is that which "a reasonable mind might accept as adequate to support the [agency's] conclusion." *Mach Mining, LLC v. Sec'y of Labor*, 809 F.3d 1259, 1263 (D.C. Cir. 2016). This "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Epsilon Elecs., Inc. v. Dep't of Treasury*, 857 F.3d 913, 918, 925 (D.C. Cir. 2017) (cleaned up). "Under this highly deferential standard of review, the court presumes the validity of agency action and must affirm unless the [agency] failed to consider

relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (cleaned up). So long as an agency "articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted), a court may not "substitute [its] judgment for the agency's," even if it "might have reached a different conclusion in the first instance." *Epsilon Elecs.*, 857 F.3d at 918.

When "the words of [a] statute are unambiguous, the judicial inquiry is complete.'" *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)). While the Court may not defer to an agency interpretation of the law when a statute is ambiguous, "the longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Loper Bright Enterprises v. Raimondo*, No. 22-1219, 2024 WL 3208360, at **9, 22 (U.S. June 28, 2024) (quoting *Nat'l Lab. Rels. Bd. v. Noel Canning*, 573 U.S. 513, 525 (2014)) (cleaned up).

## ARGUMENT

### I.    SBA's Denial is Not Arbitrary or Capricious and is Supported by the Record.

SBA's decision to deny Plaintiff SVOG funding is well-supported by the administrative record. Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court is responsible for determining "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Havens v. Mabus*, 146 F. Supp. 3d 202, 214 (D.D.C. 2015) (quoting *Occidental Eng'g Co. v. INS*, 753 F. 2d 766, 769-70 (9th Cir. 1985) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). In an APA case, "courts may only set aside agency actions, including those of the [SBA], that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *U.S. Int'l Union v. Pension Ben. Guar. Corp.*,

839 F. Supp. 2d 232, 245 (D.D.C. 2012), *aff'd*, 707 F.3d 319 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A); *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan,* 512 F. Supp. 2d 32, 37 (D.D.C. 2007). "In evaluating agency actions under this standard, courts must consider 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *Marsh v. Or. Nat'l Res. Council,* 490 U.S. 360, 378 (1989) (internal quotations and citation omitted); *Citizens to Preserve Overton Park*, 401 U.S. at 416; *DIRECTV, Inc. v. FCC*, 110 F.3d 816, 826 (D.C. Cir. 1997)).

To qualify as arbitrary and capricious, an agency typically must have "relied on factors which Congress has not intended it to consider," "entirely failed to consider an important aspect of the problem," "offered an explanation for its decision that runs counter to the evidence before the agency," or be "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Virginia v. Johnson*, 609 F. Supp. 2d 1, 6-7 (D.D.C. 2009) (quoting *State Farm*, 463 U.S. at 43 (internal quotation marks omitted)). Factual conclusions are reviewed under the substantial evidence standard and may be overturned where they are "unsupported by substantial evidence in a case." 5 U.S.C. § 706(2)(E); *Borgess Med. Ctr.*, 966 F. Supp. 2d at 5. Courts reviewing for substantial evidence "do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010). The agency's decision is presumed to be valid, and a court must not substitute its judgment for that of the agency. *Havens*, 146 F. Supp. 3d at 214 (citing *Citizens to Preserve Overton Park*, 401 U.S. at 415; *State Farm*, 463 U.S. at 43). In any event, if an agency decision is violative of the APA, the "appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such

situations is to act as an appellate tribunal." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012).

Here, SBA's denial is not arbitrary or capricious; rather, it is amply supported by the administrative record and is consistent with the authorizing statute. In denying Plaintiff's application for SVOG funds, SBA ultimately found that the company was ineligible for the SVOG program on the basis that the business violates 15 U.S.C. § 9009a(1)(B), which prohibits SBA from issuing SVOG awards to a business that "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays of a prurient sexual nature." AR 5-15, 271-74.

In sum, SBA determined that Club Cobra's marketing of—and the entertainment provided by—the go-go dancers qualifies as performances of and depictions of a prurient sexual nature. AR 271-74. Plaintiff's own materials support this finding. Plaintiff's appeal application materials tout the business's "effective plan of Web and Social Media," AR 31, including Facebook and Instagram, where Plaintiff represented it "feature[s] Team Cobra & The Team Dancers." *Id.* A review of the images of go-go dancers on Club Cobra's social media pages demonstrates that their performances and depictions are intended to arouse and appeal to the sexual desire of Club Cobra's patrons and to incite lustful thoughts. AR 16-25. The record contains fifteen images from Club Cobra's Instagram account, four from Club Cobra's Facebook page, and six screenshots of pictures and videos from Club Cobra's Twitter account. *Id.* These include images of dancers posing in sexualized positions wearing only revealing thong underwear or jockey shorts, which the dancers are sometimes depicted pulling down as if to reveal their genitalia. *Id.* Tellingly, Plaintiff does not

deny that these images are highly sexually suggestive and intending to excite lust, characterizing the go-go dancers' performances as "of an 'erotic' and 'sexy' variety." Pl.'s Mot. at 12, 15.[6]

Plaintiff's promotional advertisements on its Twitter account further illustrate the SBA's finding—the materials promote erotic videos of the Club Cobra male go-go dancers, including camera angles focusing on seemingly aroused genitalia. AR 22-24; 271-72. In its Motion for Summary Judgment, Plaintiff attempts to characterize these videos as "videos that the owner of [Plaintiff] published on a third-party website," as if to imply that the videos had no connection whatsoever to Plaintiff's business, Club Cobra. Pl.'s Mot. at 11, 20. But the screen shots of video clips reviewed by the SBA and included in the administrative record are video clips of Club Cobra dancers promoted on and posted on the official Club Cobra Twitter account, often with the words "ClubCobraLive" prominently displayed. AR 22-24. Although the full videos may have only been available on a third party website, OnlyFans.com, the video clips that SBA reviewed were available on Club Cobra's official Twitter feed, *id*., and Plaintiff included information about these videos in its application materials, *see* AR 42. The record thus supports that these video clips are related to Club Cobra and its business.

Finally, additional supporting evidence the SBA considered to determine that Plaintiff presents live performances of a prurient sexual nature were reviews posted by Club Cobra patrons on Yelp.com, including pictures where a patron is suggestively touching the upper thigh of a go-go dancer and reviews referencing the dancers as "strippers." AR 25; 271-72. While Plaintiff asserts that these Yelp reviews "were likely written by competitors in a transparent effort to tarnish Club Cobra's reputation," Pl.'s Mot. at 20, this is mere speculation on Plaintiff's part unsupported

---

[6]      All citations to documents filed on the Court's docket reference the pagination in the ECF-generated headers, not page numbers (if any) at the bottom center of the pages.

by any facts in the record.  Plaintiff cites to no authority for the proposition that the SBA may not properly consider customer reviews in connection with SVOG applications, and indeed the SBA is aware of none. Moreover, even were the SBA to exclude the two images and Yelp customer reviews from its consideration, the record would still more than amply support that Club Cobra presents live performances of a prurient sexual nature given the copious erotic images in the record from Club Cobra's own social media accounts. AR 16-24.

Given these facts, SBA reasonably found that Plaintiff was ineligible for the SVOG funding because it's business, Club Cobra, presents live performances of a prurient sexual nature; thus, SBA's denial was "support[ed]" by the "record evidence," *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010), and the Court should enter summary judgment in SBA's favor.

## II.    SBA's Denial is Not Contrary to Law.

SBA's decision is further supported by the text of the authorizing statute, Section 9009a, the SBA's expertise in administering multiple grant programs, and its consistent interpretation of its own "prurient" standard. Despite Plaintiff's assertion to the contrary, prurient subject matter need not "appeal[] to a 'shameful or morbid' and unhealthy interest in sex." Pl.'s Mot. 19 (quoting *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957)). There is nothing ambiguous about the SVOG statute, and SBA reasonably applied the statute in denying Plaintiff's application for SVOG funds, particularly considering the Agency's consistent interpretation of its own "prurient" standard in a parallel context.

As the D.C. Circuit has recognized, "the starting point in any case involving the meaning of a statute[] is the language of the statute itself." *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 467 (D.C. Cir. 2005) (quoting *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979)). And, "[i]n any event, 'where as here, the words of [a] statute are unambiguous, the judicial inquiry

- 14 -

is complete.'" *Babb*, 140 S. Ct. at 1177 (quoting *Desert Palace*, 539 U.S. at 98). Courts, as a general matter, are to presume that Congress "says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002).

On its face, the SVOG statute presents no ambiguity. The text states that SVOG awards cannot be issued to a person or entity that "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." 15 U.S.C. § 9009a(1)(B). The statute uses only the term "prurient," and does not use the terms "obscene" "pornographic" or "unlawful." *Id.* As SBA noted in its December 14, 2022, Final Decision, Merriam-Webster defines prurient as "marked by, arousing, or appealing to sexual desire." AR 271 (citing *Prurient*, Merriam-Webster, https://www.merriam-webster.com/dictionary/prurient (last visited July 15, 2024)). By any measure, SBA reasonably concluded that the record evidence demonstrates that the erotic, sexually posed images of Club Cobra go-go dancers in thong underwear and barely concealed genitalia from Club Cobra's social media pages are "appealing to sexual desire."

To the extent the Court believes the phrase "prurient sexual nature" is ambiguous, the Court may look to legislative history and the Agency's consistent interpretation of its own prurient standard. A legislative history review of the SVOG Program reveals no specific rationale explaining why Congress included the "prurient sexual nature" exemption in the statute. As SBA noted in its December 14, 2022, Final Decision, the statutory language, mirrors the precise terms of exclusion listed in SBA's regulations governing its 7(a) and 504 loan programs, which prohibit SBA financial assistance to businesses of a "prurient sexual nature." *See* AR 271; 13 C.F.R. § 120.110(p) (ineligible businesses include "[b]usinesses which: (1) Present live performances of

- 15 -

a prurient sexual nature; or (2) Derive directly or indirectly more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.").

SBA first adopted Section 120.110(p) over a quarter century ago, in January 1996, *see* 61 Fed. Reg. 3226, 3229-40 (Jan. 31, 1996) (final rule); 60 Fed. Reg. 64356, 64359-60 (Dec. 15, 1995) (proposed rule). When adopting the rule, SBA explained that it was exercising its discretion to deny financing to businesses of an "obscene, pornographic, *or* prurient" character, 60 Fed. Reg. at 64360 (emphasis added), and, by way of example, explained that under the rule "an establishment featuring nude dancing . . . would not be eligible for SBA financial assistance[,]" *id*. Since adopting Section 120.110(p), SBA has made numerous eligibility determinations under Section 120.110(p). *See* Benderson Decl. ¶ 11, *MAG Enters., Inc. v. SBA*, Civ. A. No. 21-2213 (EGS) (E.D. Pa.), ECF No. 26-1 at 4 ("*MAG* Benderson Decl."); AR 271. It has consistently interpreted the rule's "prurient" standard in a colloquial sense akin to lascivious, lustful, or erotic, and not to refer solely to a "shameful" or "morbid" interest in sex. *See MAG* Benderson Decl. ¶¶ 5-10; AR 271. Congress's adoption of the precise terminology already in use by the SBA in the area of financial assistance to business strongly implies that Congress intended to adopt the SBA's interpretation of that terminology.

Plaintiff protests that Club Cobra's performances cannot be considered prurient because they are purportedly legal and in compliance with local regulation, and because their dancers are not nude. Pl.'s Mot. at 9, 20-21. But nothing in the SVOG statute, the dictionary definition of prurient, or SBA's consistent interpretation of its own prurient sexual nature standard requires prurient performances to be illegal or nude. A scantily clad, completely legal dance performance may still qualify as being of a prurient sexual nature where it is lascivious, lustful, or erotic. SBA

- 16 -

therefore reasonably determined that the erotic and sexually suggestive images and performances on Club Cobra's social media were evidence that Club Cobra (and thus Plaintiff) were ineligible for SVOG funds based on the SVOG statute's explicit exclusion from the program of live venue operators presenting performances of a prurient sexual nature.

Where SBA applied to Plaintiff's application the clear language and context of the statutory text—in a manner wholly consistent with the Agency's longstanding interpretation of its own parallel standard—and determined that Plaintiff was ineligible for SVOG funds because its business, Club Cobra, presents live performances of a prurient sexual nature, SBA did not deviate from the statutory text in denying Plaintiff's application.

### III.    Plaintiff Has Not Demonstrated that the SBA's Denial is Arbitrary or Capricious, Unsupported by the Record, or Contrary to Law.

For the reasons described in Section II, SBA considered the evidence before it to determine that Plaintiff was statutorily ineligible for an SVOG award under the SVOG statute. Plaintiff contends, however, that SBA's decision was arbitrary and capricious, that SBA failed to consider relevant evidence of Plaintiff's eligibility, and that SBA's decision is not supported by substantial evidence. Pl.'s Mot. at 14-21.

Plaintiff raises three points in its motion for summary judgment: (i) that SBA treated Plaintiff disparately from similarly situated competitors; (ii) that SBA's "cursory" and "inadequate" review failed to examine the evidence actually submitted by Plaintiff in support of its contention that it met the definition of a live venue operator under the SVOG statute; and (iii) that SBA's decision does not identify facts supporting its conclusion that Club Cobra meets the definition of prurient subject matter adopted in *Roth v. United States*. *Id*. While several of these points are already addressed in Section II, above, Plaintiff's claims also lack merit for the following additional reasons.

A.        **Plaintiff Fails to Show Any Disparate Treatment by SBA.**

Plaintiff argues that SBA treated it disparately from similarly situated competitors. Pl.'s Mot. at 14-17. To be sure, "an agency may not treat like cases differently." *Eagle Broad. Grp., Ltd. v. FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009) (quotation marks omitted). As it relates to the award of SVOG funding, this Court has required SBA to ensure they are treating similarly situated competitors similarly. Mem. Op. at 10-12, ECF No. 47 (noting that SBA's "duty extends to when an agency treats similarly situated competitors differently; it must provide a 'reasonable justification' for any adverse treatment."); *see also* Mem. Op., *MomoCon, LLC v. SBA*, Civ. A. No. 21-2386 (RC) (D.D.C. Feb. 10, 2022), ECF No. 32 at 10 (leaving room for SBA to argue that an applicant "is sufficiently different from the competitors such that comparison with the competitors' application results is irrelevant"). Plaintiff, however, fails to demonstrate that SBA's awards to the five identified competitors demonstrated any such disparate treatment.

1.        There is No Evidence that Reload Entertainment and Pico Productions Are Ineligible on Prurient Interest Grounds.

In its Motion, Plaintiff only addresses SBA's treatment of Reload Entertainment ("Reload") and Pico Productions ("Pico"). Pl.'s Mot. at 14-17. But here, Plaintiff cannot show that these two businesses are similarly situated to Plaintiff.

Pursuant to this Court's September 28, 2022, Order, SBA explicitly addressed both Pico and Reload in its December 14, 2022, Final Decision. AR 272-74. SBA explained that it reviewed information that was publicly available about these two businesses at the time SBA granted their SVOG applications, specifically Pico's then-existing website, as well as Reload's then-existing website, Instagram, and Facebook pages. *Id.* SBA explained that it endeavored to review those materials "that would have been available at the time the grant was awarded in order to replicate, to the extent possible, the initial review of the application." AR 272 n.1.

- 18 -

SBA then explained that based on its review of specific pictures or photographs on these then-existing pages, there was not sufficient evidence for SBA to determine that either Pico or Reload were ineligible for SVOG grants on prurient interest grounds. AR 272-74. SBA determined that the pictures evident in these businesses' public materials did not suggest that they put on sufficient events of prurient interest. *Id.* In this way, SBA sufficiently differentiated Plaintiff from these two businesses by contrasting the multitude of evidence pointing to the prurient interest in Plaintiff's events, *see supra* § I, with the lack of such evidence of prurient interest in those events hosted by Pico and Reload, AR 272-74.

Plaintiff's objections to SBA's explanations are not persuasive. As an initial matter, to the extent Plaintiff quibbles on the exact level of detail SBA should have provided, "[a]n agency's decision need not be a model of analytic precision to survive a challenge under [the arbitrary or capricious] standard." *United Airlines, Inc. v. TSA*, 20 F.4th 57, 62 (D.C. Cir. 2021) (quotation marks omitted). So long as an agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made," courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (cleaned up).

More specifically as to SBA's differentiation of Reload, Plaintiff objects by pointing to three advertisements from Reload's social media and other pictures of patrons at Reload's nightclub. *See* Pl.'s Mot. at 15-16. Plaintiff's objection, however, wholly ignores that SBA's explanation differentiating Plaintiff from Reload has already been found adequate by this Court. Although the Court remanded to SBA for a formal explanation of Plaintiff's identified competitors, the Court nonetheless found that SBA's informal discussion of Reload in the Declaration of Eric Benderson dated January 13, 2022 (the "Benderson Declaration"), ECF No. 30-1, "does consider

- 19 -

the relevant distinctions between Reload and [Plaintiff], identifying specific differences in both companies' marketing materials that justify Reload's SVOG award." *See* Mem. Op. at 10, ECF No. 47 (taking issue only with SBA's informal review of Plaintiff's four other identified competitors). In issuing its December 14, 2022, Decision, SBA used the same explanation from the Benderson Declaration. The Benderson Declaration noted:

> Reload [] does appear to have at least one marketing ad on its social media featuring a muscled man wearing only thong-style underwear, the majority of its other marketing ads on its social media contain similar muscled men but those images only focus on the models' unclothed upper body (i.e. the muscled torso, arms, back) and there is not a focus on the models' genitalia.

*Id.* ¶ 21, ECF No. 30-1 at 7. Mirroring the Benderson Declaration, SBA stated in its Final December 14, 2022, decision that in the social media post Plaintiff identified, "the man in this photograph is in a revealing thong, with [a] visible bulge, and is posing in a seductive manner." AR 274. But SBA noted, similarly to the Benderson Declaration, that "the majority of the posts on Instagram do not demonstrate that this is commonplace and as previously stated, there is no evidence that the individuals are dressed this way at the events held at the club." *Id.* SBA further noted in its Final Decision that it "does not appear from publicly available information that" the "sexually suggestive marketing materials" "represent[] the content of the performances at the this club." *Id.* Additionally, SBA's final decision contrasted Plaintiff with Reload like in the Benderson Declaration. *Compare* AR 272 (noting Plaintiff, in contrast to the identified competitors, "submitted marketing materials of individuals in seemingly sexualized poses typically wearing only revealing thong underwear or jockey shorts"), *with* Benderson Decl. ¶ 21, ECF No. 30-1 at 7 (noting Plaintiff, in contrast to Reload, had "many examples" of images in its social media and OnlyFans.com website that "repeatedly focuses on and emphasizes (via camera ang[les] and cropping) the seemingly aroused genitalia of the male models wearing only tight, thong-style underwear."). As a result, given the Court's previous satisfaction with the Benderson Declaration

and the SBA's substantially identical explanation to that declaration, the Court should again find that SBA sufficiently explained any differential treatment between Plaintiff and Reload.

Nonetheless, Plaintiff fails to demonstrate that SBA's differentiation of Reload was not otherwise reasonable. Plaintiff cherry-picks photographs of purported performers from Reload's Instagram page,[7] but contrary to Plaintiff's assertion, SBA specifically explained why these photographs are advertising and do not appear representative of Reload's live events or how individuals are generally dressed at Reload's club. *See* AR 274. SBA explained that most other posts in Plaintiff's Instagram are not sufficiently demonstrative of prurient interest. *Id.* And SBA's assertion is supported by Reload's social media: A majority of Reload's other marketing materials on Instagram[8] and Facebook[9] from around 2020 and 2021, when SBA was reviewing Reload's SVOG application, feature entirely clothed performers in non-sexually suggestive positions. And to the extent any of the performers in Reload's social media marketing material at that time reveal

---

[7]    *See* Pl.'s Mot. at 15-16 (citing Reload Entertainment Inc. (@reloadentertainmentinc), Instagram (Mar. 18, 2017), https://www.instagram.com/p/BRywtc4jbB1/; *ReloadEntertainmentInc*, Instagram (July 21, 2018), https://www.instagram.com/p/BlgY7xKgkV9/; Reload Entertainment Inc., Facebook (July 8, 2021), https://www.facebook.com/photo/?fbid=10159263102054556&set=g.459243811399546).

[8]    *See, e.g.*, Reload Entertainment Inc. *(*@ReloadEntertainmentInc), Instagram (June 26, 2021), https://www.instagram.com/p/CQmsv0lBiz9/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (June 19, 2020), https://www.instagram.com/p/CBmrR6GBzlx/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Jan. 15, 2020), https://www.instagram.com/p/B7XG3jHh4tq/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=1.

[9]    *See, e.g.*, *Reload After Hours*, Facebook (July 3, 2021), https://www.facebook.com/photo?fbid=10159253608634556&set=pcb.826701777987079; *id.* (June 26, 2021), https://www.facebook.com/photo/?fbid=10159240747899556&set=gm.822530921737498&idorvanity=459243811399546; *id.* (June 28, 2020), https://www.facebook.com/photo/?fbid=10158361864679556&set=gm.583131329010793&idorvanity=459243811399546; *id.* (June 21, 2020), https://www.facebook.com/events/323441675318626/?ref=newsfeed; *id.* (Sept. 5, 2020, https://www.facebook.com/photo/?fbid=10158552089714556&set=gm.635248603799065&idorvanity=459243811399546.

- 21 -

their bare muscled torsos, these performers are not posed in any sexually suggestive matter (for instance, crouching while facing the floor, standing with fists over jean pants pockets or on hips, standing in a group, standing facing away from the camera, or posed in a running race starting position or batting position).[10] And none of these photographs focus on genitalia, or indeed even display them. Additionally, the other pictures that Plaintiff identifies are of the patrons at Reload's nightclub, not its live performers.[11] Patrons' dress does not necessarily dictate the nature of the live performances they attend. Indeed, should patrons of a ballet dress as cowboys, that does not transform the ballet into a rodeo. In Reload's case, specifically, the performing DJ in one of the pictures Plaintiff identifies is actually clothed in a black shirt.[12] As a result, SBA did not act arbitrarily or capriciously by concluding that Reload's marketing materials were not necessarily

---

[10]    *See, e.g.*, Reload After Hours, Facebook (July 10, 2021), https://www.facebook.com/photo/?fbid=10159266983314556&set=gm.831060807551176&idorvanity=459243811399546; *id.* (Aug. 1, 2020), https://www.facebook.com/photo?fbid=3236236333104718&set=pcb.603921366931789; Reload Entertainment Inc. (@reloadentertainmentinc), Instagram (June 14, 2020), https://www.instagram.com/p/CBbwVBUBALT/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Aug. 1, 2020), https://www.instagram.com/p/CDWGI8_hf4d/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Aug. 17, 2021), https://www.instagram.com/p/CSsXwvjnnSw/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (May 23, 2020), https://www.instagram.com/p/CAjK5LDhjiD/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Feb. 11, 2020), https://www.instagram.com/p/B8cKIDpBISf/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Jan. 28, 2020), https://www.instagram.com/p/B74T2Dnh_kw/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D; *id.* (Feb. 29, 2020), https://www.instagram.com/p/B9J1awJhGAe/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA==; *id.* (Mar. 2, 2020), https://www.instagram.com/p/B9PpQ5nhmiT/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA==

[11]    *See* Reload Entertainment Inc. (@reloadentertainmentinc), Instagram (Feb. 18, 2016), https://www.instagram.com/p/BB8mcQVg_55/; *id.* (Oct. 18, 2016), https://www.instagram.com/p/BLtyHF9BASL/; Reload After Hours, Facebook (Oct. 26, 2022), https://www.facebook.com/photo/?fbid=10160071535504556&set=g.459243811399546.

[12]    *See* Reload Entertainment Inc. (@reloadentertainmentinc), Instagram (Feb. 18, 2016), https://www.instagram.com/p/BB8mcQVg_55/.

evidence of prurient interest in Reload nightclub's live events and thereby determining that there was not sufficient evidence of prurient interest.

As to Pico, Plaintiff objects that SBA merely stated that Pico's club, El Cid, appeared to put on burlesque shows, which is not immediately disqualifying. *See* Pl.'s Mot. at 16-17. But Plaintiff has not pointed to any evidence or authority that SBA's treatment of burlesque is arbitrary or capricious, or contrary to law. Indeed, as relevant here, Merriam Webster defines burlesque as "theatrical entertainment of a broadly humorous often earthy character consisting of short turns . . . , comic skits, and sometimes striptease acts." *Burlesque*, Merriam-Webster.com https://www.merriam-webster.com/dictionary/burlesque (last visited July 15, 2024). As a result, by the very fact that it "sometimes" has striptease acts, burlesque does not generally hinge on being "'marked by, arousing, or appealing to sexual desire.'" *Contra* AR 271 (citing *Prurient*, Merriam-Webster.com https://www.merriam-webster.com/dictionary/prurient (last visited July 15, 2024)). Therefore, SBA did not act arbitrarily or capriciously, or contrary to law, in not immediately disqualifying burlesque events as a general matter.

As applied to Pico, nothing in the marketing materials that Plaintiff cites demonstrably shows that El Cid's live events crossed the line from featuring "broadly humorous often earthy character" to "sexual desire." Indeed, the photograph on El Cid's website on April 16, 2021, that Plaintiff identifies features someone dressed in a red lobster outfit—the individual's right hand is outfitted with a torso-sized lobster claw glove and atop their head is a headdress with two fist-sized cartoon googly eyes and long, red antennae spiraling in different directions.[13] Additionally,

---

[13]    *El Cid Sunset: Los Angeles' Premiere Flamenco Club and Live Event Destination*, http://www.elcidsunset.com [https://web.archive.org/web/20210416003029/https://www.elcidsunset.com/].

the Drop Dead Gorgeous show hosted by El Cid that Plaintiff identifies[14] is sponsored by *Girls & Corpses Magazine*, a humor magazine that satirizes advertising. *See* Daily News & Bob Strauss, *'Girls and Corpses' Magazine Aims for Dead-on Fun*, Los Angeles Daily News (Oct. 30, 2011), https://www.dailynews.com/2011/10/30/girls-and-corpses-magazine-aims-for-dead-on-fun/ (last updated Aug. 28, 2017) (the magazine's founder claims the magazine is "'a commentary on advertising, where you put a beautiful girl next to anything to sell it'"). In this light, SBA did not act arbitrarily or capriciously, in a way unsupported by evidence, or contrary to law by concluding that these pictured burlesque shows were humorous and earthy, rather than appealing to sexual desire, and therefore not of prurient interest.

Either way, the precise degree of whether businesses like Pico or Reload host live events of prurient interest is properly left to SBA's judgment. *See Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 116 F.3d 520, 549 (D.C. Cir. 1997) ("Agencies often must contend with matters of degree." (citation omitted)); *State Farm*, 463 U.S. at 43 ("a court is not to substitute its judgment for that of the agency). Here, SBA's explanation that there was not sufficient evidence of prurient interest in those live events hosted by Pico and Reload is one of degree, and SBA's reasoned explanation that there was far more evidence of prurient interest in Plaintiff's marketing materials as compared to those for Pico and Reload is more than sufficient to satisfy the arbitrary and capricious standard that governs this Court's review.

Finally, SBA has no reason to treat Plaintiff's competitors any differently than Plaintiff. Plaintiff's somewhat odd and unsupported assertion that SBA's denial of Plaintiff's application was due to "bias by the individual reviewer as to LGBTQ+ communities like the community of

---

[14]    *See Dropdead Gorgeous*, Eventbrite, https://www.eventbrite.com/e/sultry-sweet-burlesque-variety-show-drop-dead-georgous-girls-and-corpses-magazine-spring-issue-tickets-32074275020?aff=ebdsoporgprofile.

which [Plaintiff] is part," Pl.'s Mot. at 20, is internally inconsistent with Plaintiff's assertion that SBA granted the applications of its competitors, all of whom Plaintiff contends are clubs catering to the LGBTQ+ community. 2d Am. Compl. ¶¶ 33-38, ECF No. 69 at 8-9; Pl.'s Mot. at 12-13. The goal of the SVOG program and its statute is to assist qualified live venue operators or promoters adversely affected by the COVID-19 pandemic. With that goal in mind, SBA is motivated to ensure that each qualified applicant receives SVOG funding, rather than to create a "distinct competitive disadvantage" for any particular business on the basis of sexual orientation bias as Plaintiff suggests. Plaintiff did not receive funding because it did not qualify under the statute, not because SBA thought lesser of the organization or the community of which it considers itself a part.

       2.       Plaintiff Concedes SBA Did Not Treat It Disparately by Awarding Jewel's <u>Catch One Corporation, Club Los Globos Corporation, and Vern Theater.</u>

In its Motion, Plaintiff does not object to SBA's treatment of Jewel's Catch One Corporation, Club Los Globos Corporation, and Vern Theater. *See* Pl.'s Mot. at 14-17. Indeed, no materially disparate treatment has occurred because SBA has concluded that the materials at the time it considered these businesses' SVOG applications did not show any events of prurient interest. AR 272-74; AR 272 n.1 (noting that "[m]aterials posted regarding events hosted after the grant was awarded would not have been reviewed by SBA."). SBA, nonetheless, noted that "[a]ny events that occur after an award is made that raise concerns about an entities use of grant funds on ineligible activities will be reviewed and addressed in the grant monitoring and audit process." *Id*.

Indeed, as another judge has held, no disparate treatment has occurred where SBA intends to address any improperly granted SVOG funds through its own processes. *See MomoCon, LLC v. Small Bus. Admin.*, Civ. A. No. 21-2386 (RC), 2023 WL 8880335, at *11 (D.D.C. Dec. 22, 2023)

(finding no disparate treatment because "SBA took notice of its disparate treatment of MomoCon and is following the process to address that mistake.").

Although SBA does not claim it made a mistake in originally granting these three businesses an SVOG award as it did in *Momocon*, it has nonetheless acknowledged that if additional information shows that the three businesses should not be entitled to an award, it will be addressed through its administrative processes. *Id.* Thus, for the same reasons held in *Momocon*, SBA's explanation here should likewise be sufficient to alleviate this Court's previous concerns about SBA's differentiation of these businesses. As in *Momocon*, the only difference in SBA's treatment of Plaintiff and the three other businesses would be that the latter received temporary custody of funds that SBA may require them to return. That is simply too trivial a distinction to require an explanation. *See Chambers v. District of Columbia*, 35 F.4th 870, 875 (D.C. Cir. 2022) (en banc) ("the principle *de minimis non curat lex*—the law is not concerned with trifles—is assumed to be incorporated in every statute, absent an indication to the contrary"). Any contrary rule would give Plaintiff a windfall benefit to which it is not otherwise entitled, simply because other third-party businesses may have improperly used their SVOG awards after SBA had a reasonable basis to originally grant them. "In administrative law, as elsewhere, two wrongs do not make a right." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 928 (D.C. Cir. 2017).

Thus, Plaintiff cannot demonstrate, nor does it attempt to demonstrate, any materially disparate treatment by pointing to the awards preliminarily granted to Jewel's Catch One Corporation, Club Los Globos Corporation, and Vern Theater.

### B.    SBA Did Not Ignore the Information Plaintiff Submitted.

Furthermore, SBA did not ignore the information Plaintiff submitted. Rather, SBA spent considerable time reviewing and reevaluating Plaintiff's entire submission prior to determining that it's business, Club Cobra, presents live performances of a prurient sexual nature. *See supra*

§ II. On these grounds, the Court should uphold the SBA's decision and award judgment in its favor. For the same reasons, the Court should also reject Plaintiff's argument that SBA's denial violated the Economic Aid Act because Plaintiff demonstrated its eligibility. Pl.'s Mot. at 17-18. As explained above, *supra* § II, SBA engaged in a thorough review of Plaintiff's application and the eligibility requirements and concluded that Plaintiff's live go-go dance performances and its promotional materials for the same on its social media pages were sufficiently erotic, sexually suggestive, and lustful that they met the definition of prurient sexual nature. On this basis, SBA properly determined that Plaintiff did not meet the eligibility requirements for SVOG funding. That the SBA found Plaintiff ineligible based on the prurient sexual nature exemption does not imply that the SBA failed to review the other evidence Plaintiff produced. Plaintiff's suggestion that SBA violated the Economic Aid Act by denying Plaintiff funding is wholly without merit in light of the record evidence and given that SBA applied the terms of an unambiguous statute in the awarding of SVOG funds.

### C.    SBA Did Not Improperly Define "Prurient Interest."

Finally, Plaintiff's assertion that the SBA's decision must identify facts supporting a conclusion that Club Cobra's performances meets the definition of "prurient subject matter" applied by the Supreme Court in the *Roth* case, including notions of shamefulness, morbidity, and an unhealthy interest in sex, Pl.'s Mot. at 19-21, is misguided. As a threshold issue, the *Roth* case is one interpreting a criminal obscenity statute, *see generally Roth*, 354 U.S. at 479, and therefore inapplicable to this case, which involves the interpretation of a Congressional statute appropriating emergency relief aid that does not use the term "obscenity." Moreover, as discussed in Section II above, SBA does not interpret "prurient" as it is used in § 120.110(p) to refer to a shameful or morbid interest in sex; that definition of the word is particular to the *Roth* test. In passing the SVOG statute, Congress adopted the language that the SBA had already been using and consistently

- 28 -

interpreting in the context of § 120.110(p). To the extent there is any ambiguity as to the meaning of "prurient," the Court should therefore presume that Congress was aware of the SBA's related regulations and adopt the SBA's longstanding and consistent interpretation of this standard which focuses not on a performance's shamefulness, morbidity, or unhealthiness, but rather understands prurient in a colloquial sense akin to lascivious, lustful, or erotic. *Supra* § II. Applying this definition, there is ample evidence in the record that Club Cobra presents prurient live performances.

\*   \*   \*

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Cross-Motion for Summary

Judgment, deny Plaintiff's Motion for Summary Judgment, and enter judgment for Defendants.[15]

Dated:  July 15, 2024
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/ Erika Oblea*
      ERIKA OBLEA, DC BAR #1034393
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2567
      erika.oblea@usdoj.gov

*Attorneys for the United States of America*

---

[15]    Plaintiff's request that the Court "order Defendants to" "award [Plaintiff] SVOG funds in the amount for which it is eligible"; "grant [Plaintiff] a supplemental SVOG award in the amount for which it is eligible"; and "retain appropriations . . . in amount sufficient to fund Plaintiff's SVOG initial and supplemental grant awards" is not consistent with APA jurisprudence. *See* 2d Am. Compl, Prayer for Relief ¶¶ 3-5, ECF No. 69 at 12-13. The Court should grant summary judgment for Defendants, but even if the Court were to not, the only available recourse is to remand back to SBA for further reconsideration. *See PPG Inds., Inc. v. United States*, 52 F.3d 363 (D.C. Cir. 1995) ("[W]hen a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards."); *Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005).